REUBEN GAINES, plaintiff in error, *vs.* ENOCH B. GAINES, adm'r, defendant in error.

1. Where A left, on going West, just before the late war, a sum of money with his brother, to be managed as if it were his own ; *Held*, that, in a suit by A against the administrator of the brother, who died, a memorandum-book, containing copy notes payable to A, and various other entries pertaining to the business, which A had seen and examined, and said were in the handwriting of his brother, of which he did not dispute the correctness, was admissible as evidence for the administrator.

2. Although this Court may not be entirely satisfied with the verdict of a jury, yet, if the Court below refuses a new trial, and the verdict is not such as to show evident mistake, prejudice, or corruption in the jury, this Court will not overrule the judgment of the Court below in refusing a new trial.

Assumpsit. Evidence. Motion for new trial. Before Judge PARROTT. Bartow Superior Court. March Term, 1869.

This was assumpsit for money had and received, etc., by Reuben Gaines against Enoch B. Gaines, as administrator of Aaron N. Gaines, deceased.

B. W. LEWIS, a relative of the parties, testified, that, in

Gaines *vs.* Gaines, adm'r.

October, 1860, Reuben delivered to Aaron $1 000 00 in gold coin, and a note on ———, for between $200 00 and $300 00, and said to Aaron, he though he should have ten *per cent.* upon it; that after this, during the war, Aaron delivered to witness' wife, for safe keeping, $300 00 in gold coin, belonging to Reuben; that Reuben got this $300 00 since the war; in 1862, Aaron told witness that Aycock, of Floyd county, proposed to sell his lands, three hundred and fifty-nine acres, for $4,000 00, and witness agreed, because Aaron thought it a good trade, and had not all the money to pay the price, to join him in the purchase; witness paid his part of the $4,000 00 in bank bills and Confederate currency; he did not know how Aaron paid his part, but he told the witness that he had used $720 00 or $730 00 of Reuben's money to pay for said land.

Plaintiff's attorney read in evidence a letter from Aaron to Reuben, dated 19th of December, 1860, in which Aaron wrote that he had disposed of the $1,200 00 left with him by Reuben, as follows: One note on Enoch Gaines, for $200 00, made 26th November, 1860; one on William Wright, for $150 00, dated 29th November, 1860; one on G. W. Martin, for $50 00, dated 3rd December, 1860, payable to C. Martin; (the others were payable to Reuben Gaines;) he let Crawford have $500 00, used $300 00; said he had collected $22 00 for him from Crim, and, by counting interest from the 1st of December, 1860, he owed Reuben $29 50. He said therein that Lewis, said witness, would keep a record of all these things, and that he, himself, "set down" the date of each letter to him. Here the plaintiff's testimony closed.

The defendants introduced evidence to show that Reuben did not loan said money to Aaron, but simply left it to be kept and used for Reuben's benefit, because he was going West, and feared to travel with it, and undertook to show, by lending it out and collecting it in Confederate money, etc., it was lost without Aaron's fault. It was shown that Aaron died during the war in a Federal prison.

ENOCH GAINES testified that Reuben asked him for Aaron's

book containing copy notes and dates of letters, saying it was in Aaron's handwriting, and that he wished to examine it; he did not deny its correctness.

JOHN CRAWFORD testified that there was, on a book in Enoch Gaines' possession, a copy of notes on him, all of which note he had paid, except about $100 00.

The defendant's attorneys then offered in evidence said book. It contained various copy notes and memoranda concerning them. For instance: "Twelve months after date I promise to pay Reuben Gaines or bearer five hundred dollars, borrowed money, for value received, this December 4th, 1860. This is a copy of John Crawford's note." It is crossed with a pen, and marked "Paid." There were copies of notes suiting the description in said letter, several other notes against Crawford and others, all marked paid, without an entry of the dates of payment. Also, on said book, was a statement, signed A. N. Gaines, that he owed Reuben Gaines $300 00, with interest from the 1st of December, 1860, and another reciting that he had $918 50 of Reuben's money, subject to his order. Neither of these statements was dated. There was a memorandum of dates of letters from Aaron to Reuben, by which it appeared he had written him frequently, and once on the 19th of December, 1860.

Plaintiff's attorney objected to the book as evidence, but the objection was overruled. There was other testimony *pro* and *con*, but it it is not material to an understanding of the law of this cause. The jury found for the defendant, and decreed that the notes unpaid should be delivered up to Reuben. A new trial was moved for, on the grounds that the verdict was against the evidence, etc., and because the Court admitted said book as evidence. The Court refused a new trial, and that is assigned as error on said grounds.

WARREN AKIN, for plaintiff in error.

WILLIAM T. WOFFORD, for defendant.

Gaines *vs.* Gaines, adm'r.

McCay, J.

1. The book offered by the defendant and admitted in evidence, was proven to be in the handwriting of deceased, and it was shown that the entries were cotemporaneous with the occurrence of the transactions.

It was the statement by a trustee of his doings as such. It charged himself with various matters, and most of the entries made in it were against his own interest. Besides, it was in proof that the plaintiff had seen and examined the book, and had it for several days in his possession, and, at that time, did not deny its correctness.

We think, upon the whole, that the objection to the book was not well founded. Its entries, though not conclusive, were evidence for the jury to consider: (Code, sec. 2723,) and they have additional effect from the fact, that, when examined by the plaintiff, he did not, at first, deny they were correct.

2. We do not think the defendant's case, before the jury, was such as perfectly justifies and requires the verdict. We should be inclined, if we were of a jury to try the issue, to find for the plaintiff in some amount. But we are no jury. It is not our province to scan a verdict, unless it be illegal—unless there be no evidence to sustain it—unless the jury have left their sphere to judge of facts, and found a verdict from whim, prejudice, or mistake.

This is a case of doubt. The intestate was a bailee, one, too, from mere kindness and brotherly love. Since the bailment, he has passed through terrible scenes of public war and private bloodshed.

As is admitted by both parties, his acts, so far as they are clearly traceable, were, as to this deposit, scrupulously correct and precise, and it is only after the bloody drama that opened in 1861, and continued until he came to a bloody death at the hands of the assassin, that there is any obscurity. It appears, too, that his books and papers were destroyed by fire, during the war.

As a matter of course, this was his misfortune, and

should not injure others; yet, these, altogether, are, to our minds, reasons for not judging too hardly of a verdict, made by a jury of the vicinage, knowing the man and the witnesses, their habits and character. The Judge, too, who tried the case, has refused to interfere, nor will we.

We repeat, what we have so often said, it must be a case of more than ordinary strength, to induce us to set aside a verdict as against evidence. This is a Court of *law*, and it is only when the jury have violated the law that we have any right to interfere.

Judgment affirmed.